UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

Polaris Processing, LLC

    Plaintiff

v.

New Rise Renewables Reno, LLC,

    Defendant

Case No.: 2:24-cv-01907-JAD-MDC

**Order Granting Plaintiff's Motion for Partial Summary Judgment**

[ECF No. 57]

When New Rise Renewables Reno, LLC got behind on its bills for services provided by Polaris Processing, LLC, the two companies entered into a settlement agreement with a payment plan.  The first wired payments were short, and then Polaris stopped receiving them entirely, and it was soon discovered that hackers had intercepted the payments, ultimately diverting about $1 million of the funds intended for Polaris.  Having received less than half of the funds that New Rise promised, Polaris sued New Rise for breach of contract, breach of the implied covenant of good faith and fair dealing, and unjust enrichment.

Polaris now moves for summary judgment on its breach-of-contract claim, arguing that it's a "straightforward breach[-]of[-]contract case arising from New Rise's failure to pay the full amount of a settlement agreement that resolved a prior dispute."[1]  New Rise opposes with a set of affirmative defenses that it says creates disputes that a jury must resolve.  But because New Rise has not met its burden to support those defenses, and Polaris has met its burden to show that New Rise breached the settlement agreement, I grant partial summary judgment in favor of Polaris on this claim.

---

[1] ECF No. 59 at 2.

**Background**

New Rise contracted with Polaris to perform operations and maintenance work at New Rise's biofuel facility in northern Nevada.[2] New Rise fell behind on its payments for Polaris's work, so the parties resolved the dispute through a settlement agreement requiring New Rise to make a lump-sum payment of $1.7 million.[3] New Rise missed that payment deadline, and the two parties contacted a mediator to negotiate a new payment schedule that included interest, attorneys' fees, and costs.[4] New Rise's first wire transfer under the new plan was short: it sent $200,000, but Polaris received only $150,000.[5] Polaris alerted the mediator, who reported that neither he nor New Rise understood the discrepancy.[6]

Another partial payment followed, but Polaris didn't receive the next three payments.[7] It was eventually discovered that hackers had gotten access to New Rise's law firm's computer system and redirected the payments to another bank account.[8] New Rise then sent the last two payments directly to Polaris, bringing the total amount Polaris received to $750,000,[9] which was about $1 million short. So Polaris sues New Rise for breach of contract, unjust enrichment, and breach of the implied covenant of good faith and fair dealing.[10] New Rise had asserted a

---

[2] ECF No. 59 at 2; ECF No. 59-1 (services agreement).
[3] ECF No. 59 at 3.
[4] ECF No. 59-3 at 2 (settlement agreement); ECF No. 59-4 at 2, ¶ 9–11 (Michael Nodier declaration); ECF No. 59-5 (email exchange between Burcham and Gianelloni).
[5] ECF No. 59-4 at 2, ¶ 10; ECF No. 60 at 4.
[6] ECF No. 59-5 at 7.
[7] ECF No. 60 at 4.
[8] *Id.*; ECF No. 60-2 at 2 (email between counsel for parties); ECF No. 60-4 (email showing security breach).
[9] ECF No. 7 at 22; ECF No. 59 at 4.
[10] ECF No. 59 at 2; ECF No. 59-4 at 4–5. The outstanding principal settlement amount was $950,000. ECF No. 59-4 at 5, n.5.

counterclaim against Polaris for negligence, but I dismissed that claim on Polaris's motion.[11] Most of New Rise's third-party claims were dismissed by stipulation.[12] So the only claims being actively litigated are Polaris's claims against New Rise.[13] Polaris now moves for summary judgment on its breach-of-contract claim.

## Discussion

### A.   Summary-judgment standard

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[14] "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."[15] A fact is material if it could affect the outcome of the case.[16] On summary judgment, the court must view all facts and draw all inferences in the light most favorable to the nonmoving party.[17] So the parties' burdens on an issue at trial are critical.

The moving party bears the initial responsibility of presenting the basis for its motion and identifying the portions of the record or affidavits that demonstrate the absence of a genuine

---

[11] ECF No. 39.

[12] ECF Nos. 56, 62.

[13] It appears that New Rise asserted third-party claims against "King Firm LLC," *see* ECF No. 7, but no proof of service on this entity was filed. So I direct New Rise to file proof of service or the third-party claims against King Firm LLC will be dismissed without prejudice under Federal Rule of Civil Procedure 4m.

[14] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).

[15] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).

[16] *Id.* at 249.

[17] *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

issue of material fact.[18]  When the plaintiff bears the burden of proof at trial "it must come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial."[19]  The plaintiff must establish "beyond controversy every essential element of its" claim in order to avoid trial and prevail on summary judgment.[20]  If it does, the burden shifts to the nonmoving party, who "must present significant probative evidence tending to support its claim or defense."[21]

**B.  Polaris has met its summary-judgment burden to show that New Rise breached the settlement agreement.**

Polaris moves for summary judgment on its breach-of-contract claim.  To prevail on such a claim under Nevada law, the plaintiff must show (1) the existence of a valid contract, (2) the plaintiff performed its obligations, (3) a breach by the defendant, and (4) damage as a result of the breach.[22]

New Rise does not dispute that Polaris has established all of these elements.  As to the first element, the parties executed a written Settlement Agreement and Release dated April 15, 2024, in which Polaris released certain claims against New Rise in exchange for $1.7 million paid to Polaris by July 15, 2024.[23]  When New Rise failed to make the payment by that date, the

---

[18] *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).

[19] *C.A.R. Transp. Brokerage Co. v. Darden Restaurants, Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir.1992) (citation and quotations omitted)).

[20] *S. California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003).

[21] *Id.*

[22] *Desert Valley Contracting, Inc. v. In-Lo Props.*, 481 P.3d 236 (Nev. 2021) (citing *Richardson v. Jones*, 1 Nev. 405, 408-09 (1865)).

[23] ECF No. 58 at 6; ECF No. 59-3 (Settlement Agreement and Release).

agreement was modified to add interest and arrange a payment plan.[24] Polaris received four payments under that arrangement for a total of $750,000, leaving a balance owed to Polaris of $1,061,586.06 through May 9, 2025.[25] Polaris performed its obligations under the agreement.[26] New Rise makes no effort in its opposition to show otherwise. Because New Rise did not pay these sums due to Polaris under the terms of the contract, leaving Polaris more than $1 million short, the record establishes that Polaris has met its summary-judgment burden for its breach-of-contract claim.

**C.     New Rise has failed to show a genuine issue of fact to support any affirmative defense.**

Instead of attacking any element of Polaris's breach-of-contract claim, New Rise relies on four of its affirmative defenses and argues that the doctrines of comparative negligence, assumption of risk, impossibility, and mitigation of damages preclude summary judgment. Because a defendant bears the burden of proof as to its defenses, New Rise must offer sufficient evidence to raise a triable issue of fact as to each element of a defense to defeat summary judgment.[27]

*1.     New Rise's comparative-negligence defense fails as a matter of law and fact.*

In about two sentences in its opposition, New Rise suggests without any legal authority or analysis whatsoever that summary judgment on Polaris's contract claim would be "improper"

---

[24] ECF Nos. 59-4, 59-5.
[25] ECF Nos. 59-4 at ¶¶ 10–13.
[26] ECF No. 59 at 7.
[27] *Clark v. Cap. Credit & Collection Servs.*, 460 F.3d 1162, 1177 (9th Cir. 2006) (noting defendants bore the burden of proof as to an affirmative defense at summary judgment).

"because there is evidence of comparative negligence on behalf of Polaris."[28] The lack of support for the notion that the tort concept of comparative fault is a viable defense to contract breach is reason enough to reject this argument.[29]

But even if the doctrine could apply, the record can't support it. To establish comparative negligence, a defendant must show that the plaintiff was negligent and that the plaintiff's negligence was a substantial factor in causing the harm.[30] As the Supreme Court of Nevada explained in *Turner v. Mandalay Sports Entertainment, LLC*, that means that the court must first determine that a duty exists as a matter of law.[31] New Rise has not identified any viable legal duty on Polaris here. As I previously held when dismissing New Rise's negligence *counterclaim*, neither Nevada law nor the parties' agreement created any duty for Polaris to detect irregularities in the wire-transfer instructions or documents or to uncover the hacker's fraud. So even if New Rise could assert a comparative-negligence defense to Polaris's breach-of-contract claim, it cannot establish the predicate duty required to support it.[32]

---

[28] ECF No. 60 at 2, 3.

[29] *See, e.g.*, *F.D.I.C. v. JSA Appraisal Serv.*, 2010 WL 3910173 at *3 (N.D. Cal. Oct. 5, 2010) (striking comparative-negligence affirmative defense to breach of contract claim, relying on *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 2 P.3d 1 (Cal. 2000) (rejecting comparative fault as an affirmative defense in an insurance bad-faith case and recognizing that "contractual breaches are generally excluded from comparative fault allocations")).

[30] *See Shuette v. Beazer Homes Holdings Corp.*, 124 P.3d 530, 546 (Nev. 2005) (citing Restatement (Second) of Torts § 465(1) (Am. Law. Ins. 1965)).

[31] *See Turner v. Mandalay Sports Ent., LLC*, 180 P.3d 1172, 1177 n.30 (Nev. 2008) ("We also overrule *Mizushima* to the extent that it treated the determination of duty in negligence cases as a factor left to the jury in the comparative negligence analysis.").

[32] ECF No. 39.

### 2. *New Rise's assumption-of-risk defense fails as a matter of law and fact.*

New Rise next theorizes that "Polaris assumed the risk of agreeing to allow the wire transfer of this amount of money knowing the potential for fraud."[33] Acknowledging that this defense is generally one to negligence, New Rise baldly suggests that "there are no specific reasons as to why the defense cannot be raised in contractual cases when the facts of the case warrant same."[34]

The reason this defense cannot be applied here is that assumption of the risk is a tort concept that has no application to contract law. New Rise does not point to, and the contract documents do not reveal, any express assumption of this risk, so it must be an implied-assumption-of-the risk defense that New Rise is asserting. Implied assumption of risk happens when "the plaintiff impliedly assumes those risks that are inherent in a particular activity."[35] The *Turner* Court held that primary implied assumption of risk is not a stand-alone affirmative defense.[36] Rather, it functions as part of the court's initial duty analysis, which asks whether the defendant's legal duty extends to the risk the plaintiff faced.[37] Because a breach-of-contract claim contains no duty component, importing a negligence-based duty analysis into this claim is

---

[33] ECF No. 60 at 7.
[34] *Id.*
[35] *Turner*, 180 P.3d at 1177.
[36] *Id.*
[37] *Id.*

legally inconsistent, as many courts have held.[38]  With no duty to analyze and no authority supporting the doctrine's application here,[39] New Rise's assumption-of-the-risk defense fails.

### 3. *New Rise's impossibility defense fails because New Rise has not identified evidence supporting either the impossibility of performance or the unforeseeability of the theft.*

New Rise next argues that commercial impracticability or impossibility should excuse its nonperformance because a jury must decide whether it could have foreseen the fraudster's diversion of its payments.[40]  These doctrines excuse performance only when a promisor shows that performance has become "impossible or highly impractical" because of an unforeseeable event.[41]  Having argued out of one side of its mouth that Polaris had to know that there was a potential for fraud in this wired-payment plan,[42] New Rise then says out of the other side that its payment to Polaris should be excused because "[t]here is no way that [it] could have foreseen that the money it was sending was to a fraudster rather than Polaris."[43]

---

[38] *See, e.g.*, *Richter v. City of Des Moines*, 2012 WL 1099179 at *3 (W.D. Wash. Apr. 2, 2012) (dismissing implied assumption of the risk as an affirmative defense to breach-of-contract claim because "the theory of implied assumption of risk has no bearing on a breach of contract claim"); *Telewizja Polska USA, Inc. v. Echostar Satellite Corp.*, 2004 WL 7339192 at *3 (N.D. Ill. Sept. 1, 2004) ("Assumption of risk is a defense to negligence, and cannot be asserted as a defense to breach of contract or intentional torts.").

[39] New Rise also makes no effort to show that the record establishes a factual basis for an assumption-of-the-risk defense.  It just states without any support that Polaris agreed to accept the money through wire transfers "knowing the potential for fraud."  ECF No. 7 at 7.

[40] ECF No. 60 at 6–7.

[41] *Helms Const. & Dev. Co. v. State, ex rel. Dep't of Highways*, 634 P.2d 1224, 1225 (Nev. 1981) (cleaned up).

[42] ECF No. 60 at 7.

[43] *Id.*

8

The Supreme Court of Nevada rejected this same theory in a similar situation in *Cashman Equipment Co. v. West Edna Associates, Ltd.*[44] In *Cashman*, a higher-tiered contractor asserted impossibility after paying a middle-tiered subcontractor who absconded with the funds instead of forwarding them on to the lower-tiered subcontractor.[45] The court rejected the defense because the contractor presented no evidence that its own performance to the lower-tier subcontractor was impossible or highly impracticable, and no evidence that the theft was unforeseeable.[46] As the *Cashman* court explained, performance does not become impossible simply because repeating it would be "unappealing because of the amount involved and because [the defendant] previously paid."[47]

Like the contractor in *Cashman*, New Rise offers no evidence that the hacker's diversion of funds was an unforeseeable event. And while it undoubtedly would be unappealing to make such a large payment a second time, New Rise has not shown that doing so would be impossible or even highly impracticable. The evidence that New Rise produces in opposition to summary judgment—bank records reflecting the misdirected transfers, an email showing that a payment appeared to come from a different entity, and materials showcasing how the hack was carried out[48]—fail to support this defense.

---

[44] *Cashman Equip. Co. v. W. Edna Assocs., Ltd.*, 380 P.3d 844 (Nev. 2016).

[45] *Id.* at 846–47.

[46] *Id.* at 852–53. *See also id.* at 846–47 (citing *Elliot v. Mallory Electric Corp.*, 571 P.2d 397 (Nev. 1977), for the position that theft is not necessarily an unforeseeable event).

[47] *Cashman*, 380 P.3d at 853.

[48] *See* ECF Nos. 60-1–5.

### 4. *New Rise has not shown that Polaris failed to mitigate its damages.*

As its final argument, New Rise contends that Polaris's failure to mitigate its damages bars recovery because "there is ample evidence that shows that Polaris could have avoided their damages by simple and reasonable efforts."[49] Under the mitigation-of-damages rule, "a party cannot recover damages for loss that [it] could have avoided by reasonable efforts."[50] New Rise theorizes that "a simple audit or comptroller review" on Polaris's end might have discovered that the first two wire transfers that made it to its account came from an unfamiliar company and bank.[51] Again, New Rise cites nothing in the record to support this theory.

And indeed, the record shows that Polaris took reasonable steps. After New Rise missed its initial settlement payment, Polaris negotiated a revised plan with interest.[52] When the first payment fell short, Polaris promptly alerted New Rise by emailing the mediator: "Polaris got a wire for $150k. So not sure what's going on here. Was supposed to be $200k and there was no communication from them through you until after the fact."[53] New Rise professed to be unsure of the cause for the discrepancy, as the mediator reported that New Rise's counsel "still doesn't know why it wasn't $200k."[54] Polaris's counsel continued to probe, "We just want to know why the change in #."[55] New Rise offers nothing to suggest that, at that point, Polaris had reason or a

---

[49] ECF No. 60 at 8.
[50] *Conner v. S. Nev. Paving, Inc.*, 741 P.2d 800, 801 (Nev. 1987).
[51] ECF No. 60 at 8.
[52] ECF No. 59-4 at 3; ECF No. 59-5 at 2.
[53] ECF No. 59-5 at 8.
[54] *Id.* at 7.
[55] *Id.* at 6.

duty to suspect and investigate a third-party hacking scheme. There is thus no genuine issue of fact to support a failure-to-mitigate-damages defense.

## Conclusion

Because Polaris has met its burden to show that New Rise breached its payment agreement and none of New Rise's affirmative defenses are viable, IT IS ORDERED that Polaris's motion for summary judgment **[ECF No. 57] is GRANTED**. Polaris is entitled to judgment in its favor on its breach-of-contract claim. But because Polaris still has two claims remaining, the court will not enter judgment at this time.

IT IS FURTHER ORDERED that **New Rise has 10 days to file proof of service of the third-party complaint on King Firm LLC.** Failure to do so will result in the claims against King Firm LLC being dismissed without prejudice under Federal Rule of Civil Procedure 4m.

_____
U.S. District Judge Jennifer A. Dorsey
December 15, 2025